UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL F. COSTELLO,<br><br>       Plaintiff,<br><br>v.<br><br>KIRKWOOD PRINTING COMPANY, LLC,<br><br>       Defendant. | Civil Action No. 16-11641 |

## MEMORANDUM AND ORDER

CASPER, J.                                                                               July 19, 2018

### I.    Introduction

Plaintiff Paul Costello ("Costello") filed a complaint against his former employer, Kirkwood Printing Company, LLC ("Kirkwood Printing"), claiming that Kirkwood Printing unlawfully discriminated against him on the basis of his age in violation of Mass. Gen. L. c. 151B and the Age Discrimination in Employment Act ("ADEA"). D. 1. Kirkwood Printing then filed a motion for summary judgment. D. 22. For the following reasons, the Court ALLOWS Kirkwood Printing's motion for summary judgment.

### II.    Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The Court grants summary judgment where there is no genuine dispute as to any material fact and the

undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). A genuine dispute of material fact exists where the evidence with respect to that fact "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the burden of demonstrating the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). The Court must view the entire record in the light most favorable to the nonmoving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).

### III. Factual Background

The following facts are undisputed unless otherwise noted and are drawn from the parties' submissions of material facts, D. 24, D. 29, D. 32. Kirkwood Printing is a printing and mailing company that sells offset and digital printing services to various customers. D. 24 ¶¶ 13, 16. Kirkwood Printing is owned by Kirkwood Holdings, Inc., ("Kirkwood Holdings"), a holdings company that owns five printing/mailing divisions. D. 24 ¶ 13. Kirkwood Holdings has five co-owners: John Cummings, Robert Coppinger, Edward Kelley, William Winship, and Chuck Colvin. D. 24 ¶¶ 9, 14.

Costello worked as a salesperson at Kirkwood Printing from 1993 to 2014. D. 24 ¶ 17. In 2014, Kirkwood Holdings experienced financial difficulties and conducted layoffs across several divisions, including Kirkwood Printing. D. 24 ¶¶ 65-66. Costello was among those laid off and was 71 years old at that time. D. 23 at 1; D. 25-1 ¶ 3. The sales team at Kirkwood Printing, prior

to the layoff, consisted of eighteen people. D. 25-13 at 2. Two of those people were under 40; two of those people were in their forties; seven of those people were in their fifties; six of those people were in their sixties; and only Costello was in his seventies. D. 24 ¶¶ 70, 79; D. 25-13 at 2. The two people, other than Costello, who were laid off were 33 and 51 years old. D. 24 ¶ 70; D. 25-13 at 2. Across Kirkland Holding's divisions, thirty-six salespeople remained employed, including one person who was 75 years old. D. 24 ¶ 80.

Costello's responsibilities consisted of "finding clients that need services that were available from Kirkwood Printing and presenting the capabilities of Kirkwood Printing to those clients." D. 24 ¶ 17. His supervisor, during the relevant period, was Robert Brown. D. 24 ¶ 18. Each salesperson reporting to Brown would have a set of prospects on his list for which he was responsible for making contact. D. 24 ¶¶ 20-21. If a salesperson wanted to call on a prospect that was on the list of another salesperson, the salespeople could agree to transfer the prospect and Brown would approve it. D. 24 ¶ 21. If the salespeople did not agree, then Brown would "referee" the decision of who would be in charge of selling to that prospect, based on whether any salesperson had made progress with the prospect and which salesperson had the higher likelihood of success. D. 24 ¶¶ 22-23. There is a dispute between the parties regarding the extent to which Costello refused to give up prospects to other salespeople, requiring intervention from Brown. D. 24 ¶¶ 19-48; D. 29 ¶¶ 25-27, 39. It is undisputed that Brown discussed his perception that Costello unreasonably refused to give up prospects with the co-owners of Kirkwood Holdings. D. 24 ¶¶ 29-30.

Each year from 2008 to 2013, Costello's annual sales declined. D. 24 ¶ 49. Costello had only one new client in 2013, and only one new client in 2014 as of June. D. 24 ¶ 50. One of Costello's clients, Boston University, accounted for the majority of Costello's sales in 2012, 2013,

and 2014. D. 24 ¶¶ 51-52. Edward Kelley and William Winship, two of the co-owners of Kirkland Holdings, D. 24 ¶ 14, would also directly interface with Boston University to handle its needs. D. 24 ¶¶ 54-64.

In 2014, when the co-owners discussed whom to lay off, they solicited input from Brown. D. 24 ¶¶ 71, 73. The co-owners discussed that if they terminated Costello, they would be unlikely to lose Boston University's business because of the relationship that Kelley had with Boston University. D. 24 ¶ 71. They added that Costello had had little success in converting prospects into clients. D. 24 ¶ 71. They also discussed their view that Costello had been challenging to deal with in terms of prospects. D. 24 ¶¶ 71-72, D. 29 ¶ 89.

Prior to laying off Costello, Kelley reached out to his contact at Boston University to inform him that Costello would be laid off, and the contact indicated that Costello's lay off would not affect its business with Kirkwood Printing. D. 24 ¶ 75. Costello was subsequently laid off in June 2014. D. 24 ¶ 76. After that, the Boston University account was serviced by Winship and Kelley for some time, and then taken over by Bill Rizzo, another salesperson, who was younger than Costello. D. 24 ¶ 83, D. 29 ¶ 85.

## IV. Procedural History

On July 18, 2016, Costello filed suit in Middlesex Superior Court against Kirkwood Printing, asserting violations of state and federal antidiscrimination laws. D. 1-1 at 2-4. On August 12, 2016, Kirkwood Printing removed the case to this Court. D. 1 at 1. The Court heard argument on Kirkwood Printing's motion for summary judgment, D. 22, and took the matter under advisement. D. 33.

V.   **Discussion**

   A.   <u>**Legal Framework**</u>

Where, as here, there is no direct evidence of discrimination on the basis of age, the Court applies the <u>McDonnell-Douglas</u> burden shifting framework. <u>Torrech-Hernandez v. Gen. Elec. Co.</u>, 519 F.3d 41, 48 (1st Cir. 2008). Under that framework, the burden is first on the plaintiff to establish a prima facie case of age discrimination. <u>Id.</u> In the context of a reduction-in-force or layoff, establishing a prima facie case requires the plaintiff to show that "he was at least 40 years old; that his job performance met his employer's reasonable expectations; that he experienced an adverse employment action; and that younger persons were retained in the same position or that the employer otherwise did not treat age neutrally." <u>Currier v. United Tech. Grp.</u>, 393 F.3d 246, 254 (1st Cir. 2004). If the plaintiff does so, the burden shifts to the employer to articulate "a legitimate, nondiscriminatory basis for its adverse employment action." <u>Torrech-Hernandez</u>, 519 F.3d at 48 (citation omitted). As to the ADEA claim, if the employer is able to do so, "the burden shifts back to the employee, who must then show, by a preponderance of the evidence, that the reason given by the employer for the discharge is pretextual, and, moreover, that it is pretext for age discrimination." <u>Id.</u> (citation omitted); <u>Koster v. Trans World Airlines, Inc.</u>, 181 F.3d 24, 30 (1st Cir. 1999). As to the c. 151B claim, the employee has a similar burden, but need only show that the reasons were pretextual. <u>Koster</u>, 181 F.3d at 30.

   B.   <u>**Prima Facie Case**</u>

It is undisputed that Costello was more than forty years old at the time of his termination and that his termination constituted an adverse employment action. Kirkwood Printing contends that Costello has not met his burden of showing the final component of the prima facie case, that the employer did not treat age neutrally or that younger persons were retained in the same position. D. 23 at 5-6. Costello contends that because all the remaining salespeople at Kirkwood Printing

were younger than him, younger persons were retained in the same position as him. D. 28 at 3. Kirkwood Printing responds that a mere showing that younger people performed Costello's responsibilities after the reduction-in-force does not suffice for a prima facie showing. D. 23 at 5-6. Kirkwood Printing cites, in support of its position, Shenker v. Lockheed Sanders, Inc., 919 F. Supp. 55, 60 (D. Mass. 1996). In that case, the court held that to show that younger persons were retained in the same position, in the context of a reduction-in-force, the plaintiff must show that "younger employees, who prior to the reduction in force were not performing the primary functions of the plaintiff's job, had these functions transferred to them." Id. (citing LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 846 (1st Cir. 1993)). In LeBlanc, however, the First Circuit assumed without deciding that a plaintiff who showed that his duties were transferred to younger personnel who had previously been performing the same function and that there was a reduction in force in which two of the three employees laid off belonged to the protected class successfully proved a prima facie case for the purposes of summary judgment. Id. at 844. The First Circuit did so because it considered the question of whether the plaintiff had proved a prima facie case to be a "close" question and because it did not need to resolve that question because the employer successfully showed that it had a nondiscriminatory justification and the employee could not show that such justification was pretextual. Id. at 844-845.

The holding in Shenker that a showing that "younger persons were retained in the same position" is not made where those younger people were already performing the same tasks of the plaintiff's job prior to the reduction in force is also in tension with the First Circuit's reasoning in Koster, 181 F.3d at 31. Koster arose under Chapter 151B. Id. at 30. In that case, Koster, was one of six supervisors, two of whom were furloughed, and their duties were spread across the remaining four supervisors. Id. at 29. The First Circuit reasoned that Koster "established a prima

facie case of age discrimination" where "[a]lthough no one took over Koster's exact job, his duties were subsumed by other employees, some of whom were younger, one substantially younger, than him." Id. at 31. In Koster, those other employees were ones who had already been performing the same tasks as Koster had been performing, id. at 29, which is in tension with Shenker.

As the First Circuit did in LeBlanc, this Court assumes, without deciding, that Costello has made out a prima facie case of discrimination, because, as discussed below, Kirkwood Printing has offered a nondiscriminatory justification and Costello cannot meet his burden of proving a genuine dispute of material fact regarding whether that justification was pretextual.

### C.     **Nondiscriminatory Justification**

Kirkwood Printing offers three non-discriminatory justifications for selecting Costello in its layoffs: that Costello had not had success in converting prospects into clients; that Costello was reluctant to relinquish prospects to other salespeople; and that the majority of Costello's business came from a client whose business would stay with Kirkwood Printing if Costello were laid off. D. 23 at 7-8. Costello does not dispute that these constitute nondiscriminatory justifications. D. 28 at 4. Thus, it is Costello's burden to show that the reasons given were a pretext for age discrimination.

### D.     **Pretextual Justification**

Costello contends that one rationale, Costello's reluctance to relinquish prospects to other salespeople was pretextual because, according to Winship, that problem had existed since 2006 and Costello had never received any formal discipline with respect to the issue, indicating that the issue was not significant enough to warrant adverse employment action. D. 28 at 6-7. Costello also contends that Costello's sales numbers were better than other sales people retained by the company and that, because his compensation was solely on commission, it was in Kirkwood

7

Printing's interest to retain Costello because Costello did not generate any direct salary or benefit costs for Kirkwood Printing. D. 28 at 7-8.

Costello's arguments, however, amount to a contention that Kirkwood Printing was wrong when it concluded that Costello should be included in the layoff for the reasons it provided. But "it is not enough that [the decisionmaker's] perception may have been incorrect. Rather, the plaintiff must show that the decisionmaker did not believe in the accuracy of the reason given." Bennett v. Saint-Gobain Corp., 507 F.3d 23, 31 (1st Cir. 2007). Nothing in the record supports the inference that the decisionmakers – the co-owners – did not believe in the accuracy of the three proffered reasons. In fact, Costello only challenges the legitimacy of one of Kirkwood Printing's three reasons for selecting Costello to be laid off, but does not address the other two proffered reasons – Costello's declining sales and the secure nature of the Boston University relationship. "[A]s long as [the decisionmaker] believed that [the employee's] performance was not up to snuff – and the [employee] has presented no evidence suggesting that management thought otherwise – it is not our province to second-guess a decision to fire him as a poor performer . . . regardless of whether, to an objective observer, the decision would seem wise or foolish, correct or incorrect, sound or arbitrary." Davila v. Coporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 17 (1st Cir. 2007); see Weeks v. Lower Pioneer Valley Ed. Collaborative, No. 14-30097-MGM, 2016 WL 696096, at *8 (D. Mass. February 19, 2016).

Finally, Costello contends that Kirkwood Printing's explanation has changed over time, because in a prior proceeding Kirkwood Printing focused on the declining sales numbers and did not focus on Costello's reluctance to transfer prospects. D. 28 at 4-5. But multiple explanations do not support an inference that a proffered justification was pretextual where the explanations are

"entirely consistent" with one another, as they are here. Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 663 (1st Cir. 2010).

For all of these reasons, Costello's showing "is not sufficient to prove pretext, much less pretext which conceals a discriminatory animus." Runyon v. Massachusetts Inst. of Tech., 871 F. Supp. 1502, 1510 (D. Mass. 1994).

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Kirkwood Printing's motion for summary judgment, D. 22.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge